USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/22/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M & M PACKAGING, INC., <br><br> Plaintiff, <br><br> -against- <br><br> VINCENT MINEO, JESSICA MINEO, KAREN MINEO, MICHAEL MINEO, NICHOLAS MINEO and JOHN DOES 1–25, <br><br> Defendants. | 1:24-cv-05739-MKV <br><br> **OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff M & M Packaging, Inc. ("Plaintiff") brings this action against Vincent Mineo, Jessica Mineo, Karen Mineo, Michael Mineo, Nicholas Mineo, (collectively "Named Defendants") and John Does 1-25 (collectively, "Defendants") pursuant to the Perishable Agricultural Commodities Act, ("PACA"), 7 U.S.C. §§ 499a *et seq.* and the regulations promulgated thereunder 7 C.F.R. §§ 46.1-46.45, alleging a claim under PACA for failure to pay, for unlawful dissipation of funds, and for enforcement of a PACA trust. ("Complaint" or "Compl." [ECF No. 1]). Plaintiff also asserts claims for breach of contract, unjust enrichment, quantum meruit, and promissory estoppel. *Id.* Plaintiff's Prayer for Relief seeks Compensatory damages and related costs and attorneys' fees. *Id.* The Complaint attached two documents, a Default Order issued by the U.S. Department of Agriculture, ("Default Order" [ECF No. 1-1]), and a Settlement Agreement and Consent Order issued by U.S. Bankruptcy Court of the District of New Jersey ("Consent Order" [ECF No. 1-2]).

Simultaneous with filing the Complaint, Plaintiff moved for Preliminary Injunctive Relief and Temporary Restraining Order against Named Defendants. [ECF No. 9]. In support of its motion, Plaintiff filed a memorandum of law ("Pl. Br." [ECF No. 9]), and a Proposed Order to

Show Cause for Preliminary Injunction & Temporary Restraining Order ("Proposed Order" [ECF No. 9-1]). In opposition to Plaintiff's Motion, Named Defendants filed the Declaration of Jessica Mineo ("Mineo Decl." [ECF No. 30]), with several exhibits attached, including a memorandum of law, ("Def. Opp." [ECF No. 30-6]). Plaintiff filed a reply ("Pl. Reply" [ECF No. 32]).

For the following reasons, Plaintiff's Motion for a Preliminary Injunction is DENIED. This opinion constitutes the Court's findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a)(2).

## BACKGROUND

I.  **Transactions between M&M and Sprout and Proceedings Regarding Alleged Failure to Pay**

Plaintiff is an agricultural corporation involved in supplying and marketing agricultural goods. Compl. ¶ 14. Between February and July 2021, M&M sold and delivered potatoes and onions to Papa Sprout, Inc. ("Sprout"). Compl. ¶ 17. M&M delivered the produce as directed by Sprout and the produce was accepted by Spout at all relevant times. Compl. ¶ 19. Concurrent to delivery, invoices were generated and submitted to Sprout. Compl. ¶ 20.

Plaintiff alleges that M&M is a wholesale proprietor of produce, or a "grocery wholesaler" as defined by 7 U.S.C. § 499a (b)(12) and, at all pertinent times, Sprout was licensed, represented that they were licensed, or should have been licensed, under PACA as a "broker" as defined by 7 U.S.C. § 499a(b)(7). Compl. ¶¶ 14-16. Plaintiff asserts that it included on each invoice sent to Sprout, "written notice of intent to preserve the benefits of the trust." Compl. at ¶ 52; 7 U.S.C. § 499e(c)(3), (4). Thus, Plaintiff asserts that, when it delivered the perishable goods to Sprout, Plaintiff immediately became a beneficiary of a Statutory Trust held by Sprout. Compl. ¶¶ 51-53. Plaintiff alleges that, as of November 16, 2021, Sprout owed $713,831.39 in payment for the deliveries between February and July 2021. Compl. ¶ 21. Plaintiff does not allege when payment

was due on the relevant transactions or when it became aware that payment was not timely made.

On November 16, 2021, Sprout filed a petition for Bankruptcy under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701 *et seq*. Compl. ¶ 22; Mineo Decl. ¶ 6. Three months later, on February 17, 2022, the United States Department of Agriculture (the "USDA") issued a Default Order against Sprout, holding that Sprout "was licensed or was subject to license under the PACA" and holding that Sprout violated Section 2 of PACA in connection with the transactions at issue in the USDA case. Compl. ¶ 23; Default Order at 1. The USDA thus awarded Plaintiff $638,307.46, together with interest at a rate at 18% per annum from August 1, 2021 through the date of the Default Order, interest at a rate of 0.98% accruing from the date of the Default Order until paid, and $500 in costs. Compl. ¶ 23; Default Order at 2. Plaintiff does not allege, and the Default Order does not indicate, when Plaintiff brought an action before the USDA.

Nine months later, on or about November 22, 2022, Plaintiff filed a proof of claim in the Bankruptcy proceeding in the amount of $713,831.39. Compl. ¶ 24; Consent Order at 2. This amount appears to be based on the $638,307.46 plus interest that the USDA granted in the Default Order, though Plaintiff never expressly states this or explains how it calculated interest. Subsequently, the Chapter 7 Trustee for Sprout and Plaintiff entered a Settlement Agreement and Consent Order. Compl. ¶ 25; Consent Order. In the Consent Order, "the Trustee contends that all or a portion of the M&M Claim is not entitled to the protections of PACA and/or otherwise objects to the amount, validity and/or the priority of the M&M claim." Consent Order at 2. Nevertheless, pursuant to the Consent Order, the Chapter 7 Trustee agreed to pay Plaintiff $400,000 "[i]n full and final satisfaction of the Allowed PACA Claim in the Bankruptcy Case" and "in full and final satisfaction of [Plaintiff's] right to receive any other distributions from the Estate." Consent Order ¶3(b) & (c). The "Allowed PACA Claim" is defined as Plaintiff's claim for $713,831.39 that was "entitled to the protection afforded by PACA." Consent Order ¶3(a). The Consent Order further

states that "[t]he payment of the M&M Distribution as set forth herein is without prejudice to [Plaintiff's] standing as a PACA trust beneficiary and nothing in this Consent Order shall be deemed, interpreted or otherwise construed (i) as a waiver of [Plaintiff's] rights under PACA or (ii) to limit in any way [Plaintiff's] rights against officers, directors, shareholders, or other individuals associated with the Debtor who may be liable to [Plaintiff] for breach of the PACA trust." Consent Order ¶ 3(d).

Plaintiff alleges in this case that, under PACA, the Named Defendants are principals of Sprout, Compl. ¶ 4-8, and therefore are personally liable to Plaintiff for the difference between the award in the Default Order and the amount paid pursuant to the Consent Order, Compl. ¶ 27. Defendants dispute that the damages award ordered by the USDA is the correct amount that Sprout owed to Plaintiff at the time. Mineo Decl. ¶¶ 15-18. Defendants admit that, prior to the Chapter 7 Bankruptcy proceedings, Jessica Mineo was a principal of Sprout and Vincent Mineo was President and CEO of Sprout. Mineo Decl. ¶¶ 3, 7. Defendant alleges that all other Named Defendants were not principals of Sprout and have never been in "any position of power" within the company. Mineo Decl. ¶¶ 20-21.

## II. Plaintiff Files a Motion for a Preliminary Injunction

Contemporaneous with the filing of its Complaint on July 30, 2024, Plaintiff moved for Preliminary Injunctive Relief and Temporary Restraining Order prohibiting Named Defendants from "alienating, dissipating, paying over, or assigning any PACA trust assets received by Papa Sprout, Inc. ('Sprout') on account of produce provided to Sprout by Plaintiff[.]" Proposed Order at 2. Because neither the Complaint nor the motion for preliminary restraints had been served on the Defendants, the Court declined to enter an *ex parte* Temporary Restraining Order. [ECF No. 16]. On October 4, 2024, after the Complaint and motion were served on Defendants, Defendants

filed an Opposition to the Motion for Preliminary Restraints. On October 18, 2024, Plaintiff filed a Reply. [ECF Nos. 30 & 32]).

The parties appeared before the court for an Initial Pretrial Conference on October 30, 2024. At the conference, the parties advised the Court that they did not require an evidentiary hearing in connection with the motion for injunctive relief and intended to proceed on the documentary record before the Court. The Court has carefully reviewed all of the submissions.

## LEGAL STANDARD

A plaintiff seeking a preliminary injunction must show: (1) "a likelihood of success on the merits"; (2) "that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) "that the public interest would not be disserved by the issuance of [the] injunction." *See, e.g.*, *Res. Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107, 114 (2d Cir. 2024) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010); *see also Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (*per curiam*) (alteration in original) (emphasis in original) (internal quotation marks omitted).

## DISCUSSION

### I. Likelihood of Success on the Merits

Plaintiff has not established that it is likely to succeed on the merits. Assuming Plaintiff can show that the transactions at issue are governed by PACA, several disputed issues remain and cast doubt on Plaintiff's likelihood of success.

A. <u>The Default Order</u>

Plaintiff argues that it is "clearly likely to succeed regarding its PACA claim because it

already has" via the Default Order entered by the USDA. P. Br. at 5. However, the Default order does not require a finding that Plaintiff is likely to succeed on the merits because (a) it does not determine the liability of, or mention, the Named Defendants; (b) it is not binding against them; and (c) it may well be null and void.

The Default Order finds only Sprout liable to Plaintiff and makes no findings as to any of the Named Defendants. Default Order at 4. Sprout and the Named Defendants are not synonymous. Throughout Plaintiff's briefing it improperly conflates the two. This Court declines to assume the Defendants' liability based on the potentially null USDA finding, *see infra* at 6-7, that Sprout is liable to Plaintiff. To establish likelihood of success on the merits, Plaintiff must independently show that it is likely to prove Named Defendants themselves are liable to Plaintiff. And yet, tellingly, plaintiffs own moving brief concedes, "[t]he *only* remaining issue to be determined is which of the named defendants herein are personally liable to Plaintiff." Pl. Br. at 6.

Further, the damages amount included in the Default Order is disputed by the Named Defendants and not binding against them. Defendants claim that the amount of damages granted to Plaintiff by the Default Order is inaccurate, arguing that Plaintiff failed to account for payments made, and issued incorrect invoices. Def. Opp. at 13 (citing Mineo Decl. and exhibits). The amount of damages is relevant to the likelihood of success analysis here because it may be that Sprout paid the total amount of PACA trust assets to Plaintiff pursuant to the Consent Order and no "remainder" exists.

Plaintiff asserts that Defendants is "judicially estopped" from disputing the amount determined by the USDA to be owed because they are "attempting to now take a different position than that of Sprout when it had the opportunity to dispute and litigate the amount due and owing." Reply at 7-8 (citing *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir.

2004)). A party invoking judicial estoppel must show that "(1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). Here again Plaintiffs conflate Named Defendants with Sprout. The defendants in this case took no position in the USDA adjudication that could be inconsistent with the one taken here because they were not parties to that proceeding. As such, they are not judicially estopped from taking a position on the amount owed in this case. Further, any position that was taken by Sprout in a previous proceeding could not be imputed to Named Defendants for the purposes of judicial estoppel because the doctrine operates to prevent inconsistent results in two proceedings based on the inconsistent statements of a single litigant. *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 71 (2d Cir. 1997). Sprout is not the same litigant as Named Defendants. Moreover, Sprout also took no position in the USDA case, since it did not appear, and the proceeding resulted in a Default Order. Thus, Defendants are not estopped from arguing that the amount awarded to Plaintiff in the Default Order is incorrect or that Sprout was not liable to Plaintiff at all.

If Plaintiff intended to argue that Named Defendants were collaterally estopped from disputing the amount in PACA trust, it also fails on that ground. A similar but distinct doctrine, collateral estoppel holds that a party is precluded from litigating an issue in a case when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *See Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013); *see also Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003). First, the issue was not "actually litigated" in a previous proceeding because no defendants appeared in the previous proceeding, which resulted in a Default Order.

7

*See, e.g.*, *Am. Empire Surplus Lines Ins. Co. v. Lee*, No. 23-788, 2024 WL 3507597, at *2 (2d Cir. July 23, 2024) ("An issue is not actually litigated for purposes of collateral estopped if, for example, there has been a default[.]") (internal quotations omitted). Further, Named Defendants did not have any opportunity, let alone a "full and fair opportunity," to litigate the issue in the previous proceeding because they were not parties to the USDA adjudication. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit.").

Finally, the Default Order that Plaintiff uses to establish likelihood of success against the Named Defendants may well be null and void pursuant to 11 U.S.C. § 362:

> [A petition for Bankruptcy] operates as a stay, applicable to all entities, of-- (1) the commencement or continuation, including the issuance or employment . . . of a[n]. . . administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the case under this [the Bankruptcy Code]. 11 U.S.C. § 362(a)(1).

The automatic stay importantly "allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently." *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir.1990). At least one court in this district found that a motion for a Default Order establishing liability under PACA is barred by Section 362 when the defendant previously has filed for bankruptcy. *See Al Finer Co. v. Premium Produce Corp.*, No. 86 CIV. 1485-CSH, 1986 WL 8318, at *2 (S.D.N.Y. July 18, 1986) (declining to enter a Default Order against corporate defendant that was subject to an involuntary petition in federal Bankruptcy Court).

It appears to be undisputed that Sprout filed a Chapter 7 Bankruptcy Petition on November 16, 2021, effecting an automatic stay of all pending actions against Sprout and any future actions that arose before Sprout filed. 362 *See* Compl. ¶ 22; Mineo Decl. ¶ 6. Three months later, on

8

February 17, 2022, the Default Order *against Sprout* was issued in favor of Plaintiff. Compl. ¶ 23; Default Order at 1. The record does not include the date on which Plaintiff sought relief before the USDA. Regardless, the action likely "could have been commenced" some time prior to the effective date of the Automatic Stay, when Sprout allegedly did not timely pay for the goods at issue. Absent Bankruptcy Court relief from the automatic stay, which Plaintiff does not contend it obtained, the action before USDA was stayed once the Sprout bankruptcy petition was filed. *See* 11 U.S.C. § 362(d). Since the USDA proceeding seemingly improperly continued after the date of the automatic stay, the Default Judgment is likely null and void and certainly provides no basis for this Court to restrain Defendants' assets.

Named Defendants argue not only that the Default Order does not bind them, but also that the Default Order prevents Plaintiff from bringing the present claim. They argue that PACA created an "election of remedies" for recovering PACA trust assets and Plaintiff chose one of two remedies when it filed a complaint with the USDA instead of filing a lawsuit in any court of competent jurisdiction. Opp. at 11-12 (citing *American Banana Co. Inc. v. Republic Nat. Bank of New York, N.A.*, 362 F.3d 33, 36 (2d Cir. 2004)). This argument goes too far. Indeed, 7 U.S.C. § 499e(b) does require an individual seeking to enforce a PACA claim to "either" file a complaint with the secretary "or" sue in a court of competent jurisdiction, and other courts in this district have interpreted the statute to create an "election of remedies." *See "R" Best Produce, Inc. v. Eastside Food Plaza, Inc.*, No. 02 CIV. 6925(DLC), 2003 WL 22231577, at *2 (S.D.N.Y. Sept. 30, 2003). Plaintiff concedes that "the language of the code contemplates an election of remedies" and that Plaintiff filed a complaint against Sprout with USDA. Reply at 6.

However, Plaintiff rightly argues that this case is pursuing a *new* claim—against *new* defendants—that is not inconsistent with the USDA complaint. *See id.* The doctrine of election of remedies prevents "duplicative recovery," but where two causes of action that are not inconsistent

9

arise from a single course of events, the doctrine of election of remedies does not preclude a plaintiff from asserting both claims. *In re Riverside Nursing Home*, 144 B.R. 951, 957 (S.D.N.Y. 1992). Here, Plaintiff sought and received a Default Judgment that Sprout was liable to it for a certain amount of money. Now, after being unable to recover the full amount it sought and was awarded, Plaintiff is attempting to establish liability for the remainder against new defendants under new theories. There is no danger of duplicative recovery here, and thus, the Named Defendants' "election of remedies" argument is unavailing. This does prove, however, that Defendants here are not bound by the Default Order in the USDA proceeding.

B.     The Consent Order

Plaintiff's final assertion supporting the likelihood of success for the amount claimed in this case is that "Sprout itself admitted its liability to Plaintiff," in the Consent Order. Pl. Br. at 5.[1] As an initial matter, Sprout is not a party to *this* case and Plaintiff has not established that Named Defendants here are bound by any purported admission by Sprout. Moreover, as Named Defendants aptly argue, Sprout was not a party to the Consent Order pursuant to which the Chapter 7 Trustee in Bankruptcy—who controlled of all of the assets of Sprout, the Chapter 7 debtor—agreed only to pay Plaintiff $400,000, while acknowledging that the "M&M Claim" against the Estate was $713,831.39. Consent Order at ¶ 3(b). This claim compromise does not amount to an admission that Plaintiff was in fact owed $713,831.39 by Sprout. Regardless, Named Defendants cannot be bound by any admission by reason of the Consent Order because they were not parties to the Settlement Agreement approved by the Consent Order. *See Scott v. JPMorgan Chase & Co.*, 603 F. App'x 33, 35 (2d Cir. 2015) (holding that an entity is not bound by a settlement to

---

[1] The Court notes that there is no evidence in the record that the Bankruptcy Court in fact approved the Settlement Agreement and Consent Order. Through independent research, the Court confirmed approval by the Bankruptcy Court. *See In re: Papa Sprout, Inc.*, No. 21-18860 (CMG), (Bankr. D.N.J. July 9, 2024).

10

which it was not a party); *see also Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir. 1990) (holding that a court is not bound to accept stipulations regarding questions of law). Plaintiff offers no authority to the contrary. Unable to rely on the findings in the Default Order or any purported admission in the Consent Order, Plaintiff has not proffered any evidence that shows it is likely to prove Named Defendants liable to Plaintiff for a PACA trust.

C.    Named Defendants' Personal Liability

Plaintiff has not shown that it is likely to succeed in proving that Named Defendants are personally liable to Plaintiff. In fact, with respect to Karen, Michael, and Nicholas Mineo, Plaintiff has failed to make even a prima facie claim that they were personally liable. Plaintiff asserts, without evidence, that Named Defendants are liable based on the proposition that an individual who (a) is "in a position to control the assets" of the buyer maintaining the PACA trust and (b) "fails to preserve them," may be held "*personally liable* to the trust beneficiaries for breach of fiduciary duty." *See Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007) (emphasis added).

Regarding the first prong, Plaintiff has not shown that it is likely to prove most Named Defendants were in a position to control Sprout's assets and were thus fiduciaries of a PACA trust. Plaintiff cites to non-binding caselaw which suggests that, to satisfy the first prong in this test, Plaintiffs need only show Defendants were "principals" of Sprout, rather showing that they were in fact in control of PACA assets, to establish a fiduciary duty and merely asserts without supporting facts that Named Defendants are principals of Sprout. *See* Pl. Br. at 1, 5; Reply at 5 (citing *Horizon Mktg. v. Kingdom Int'l Ltd.*, 244 F.Supp.2d 131, 145). However, Second Circuit precedent holds that "[though] most of the cases to address [PACA] personal liability claim the individual defendants have in fact been the shareholders or officers of the dealer, the dispositive focus has generally been on whether the individual had control over the preservation or disposition

11

of the dealer's assets." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 876 (2d Cir. 2021). Plaintiff asserts no facts to support the conclusion that Named Defendants were either principals of Sprout or able to control Sprout's PACA trust assets and are thus fiduciaries of the alleged trust. Defendants on the other hand, assert that Karen, Michael, and Nicholas Mineo were not principals of Sprout and could not control Sprout's assets. Def. Opp. at 9. Moreover, Named Defendants admit that Jessica Mineo and Vincent Mineo were previously "principals" of Sprout, though they do not expressly admit that either had control of PACA assets. *Id.* In fact, once Sprout filed for bankruptcy and a Chapter 7 Trustee was appointed, the Trustee and not the Debtor Sprout, nor its officers or directors controlled the Debtor's assets. *See Thomas Am. Corp. v. Fitzgerald*, 968 F. Supp. 154, 158 (S.D.N.Y. 1997) ("Once a [Chapter 7] trustee is appointed and qualifies, the debtor must turn over to the trustee property not claimed as exempt by the debtor."); *In re First Cent. Fin. Corp.,* 377 F.3d 209, 212 (2d Cir. 2004) (citing 11 U.S.C.A. § 541). It is for this very reason that a PACA claim is often asserted against the Debtor's estate and resolved as a part of the bankruptcy case. Thus, Plaintiff has certainly not carried its burden to show that Karen, Michael, and Nicholas Mineo likely controlled Sprout assets and thus are personally liable.

Even if Plaintiff could likely show that Vincent and Jessica Mineo had control over Sprout's assets, it has not established that it is likely succeed in showing they breached a fiduciary duty by failing to preserve assets. As an initial matter, the Complaint does not clearly state a claim for breach of fiduciary duty under PACA against Named Defendants. In any event, to determine whether a PACA trustee's actions or omissions constitute a breach of fiduciary duty, we examine whether the trustee "in any way encumbered the funds or rendered them less freely available to PACA creditors." *Coosemans Specialties, Inc.*, 485 F.3d at 706. Plaintiff argues that Defendants dissipated PACA trust assets because Sprout filed for Chapter 7 bankruptcy and continues to owe Sprout for amounts in PACA trust. Reply at 11. Plaintiff cites to only one case that deals with the

12

question of whether individual defendants, in control of PACA trust assets held by a buyer, are personally liable for breach where the buyer filed for Chapter 7 Bankruptcy. Reply at 5. In that case, the sole shareholder of the buyer which filed for Chapter 7 Bankruptcy "breached his obligation to keep those assets freely available for satisfying [the buyer's] obligations to plaintiffs" regardless of "[w]hether or not [the buyer] has surrendered the trust assets by filing a petition for bankruptcy and placing any trust assets that may still exist in control of the bankruptcy trustee." *See Bronia, Inc. v. Ho*, 873 F. Supp. 854, 861 (S.D.N.Y. 1995). Though the Second Circuit has not ruled on this issue directly, other courts in this circuit and other circuits have ruled the same way. *See Bally Produce Corp. v. Deng*, No. 23 CV 6580 (ENV)(RML), 2024 WL 3813382, at *1, *3-*4 (E.D.N.Y. June 11, 2024) (holding an owner of a corporate buyer in transactions covered by PACA, who had control over the buyer's trust assets, breached his fiduciary duty as a PACA trustee by failing to pay trust assets after the corporate buyer filed for Chapter 7 bankruptcy); *Ruby Robinson Co. v. Herr*, 453 F. App'x 463, 466 (5th Cir. 2011) (holding two shareholders who owned together half of the corporate buyer in transactions covered by PACA and had "contractual authority and ability to control the trust assets," were personally liable for the remaining debt because they had "failed to protect those assets" when the buyer filed for Chapter 7 bankruptcy); *Golman-Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000); *P.L.U.S. Brokerage, Inc. v. Jong Eun Kim*, 908 F. Supp. 2d 711, 717 (D. Md. 2012). It may be that Plaintiff will be able to show that Vincent and Jessica Mineo controlled Sprout assets and filed Sprout for Chapter 7 bankruptcy.[2] But, on the record before it, the Court cannot find that Plaintiff has made a clear showing that it is likely to succeed on the merits of its claim.

---

[2] Plaintiff still has not demonstrated that it is likely to show Vincent and Jessica Mineo encumbered PACA trust assets beyond the $400,000 already paid to Plaintiff by Sprout.

D.      Statute of Limitations

Finally, nowhere in its briefing does Plaintiff address the potential statute of limitations issue in this case. Plaintiff filed the Complaint in this case on July 30, 2024 and the sales at issue occurred more than three years prior, between February 2021 and July 2021. This timeline casts serious doubt on the likelihood of success of Plaintiff's claims since they may well be barred in large part by the three-year statute of limitations imposed in these cases. *See Moza LLC v. Tumi Produce Int'l Corp.*, No. 17CV1331, 2018 WL 2192188, at *5 (S.D.N.Y. May 14, 2018) (holding the statute of limitations for claims brought in New York federal court to enforce PACA trusts is three years).

## II.     Irreparable Harm

Even assuming Plaintiff had carried its burden to show it is likely to succeed on the merits, Plaintiff failed to establish likelihood of irreparable harm, which is "an absolute requirement for a preliminary injunction." *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983); *see also Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) ("irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction"). "It is well established that an irreparable injury is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011); *see also Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002); *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (irreparable harm is likely "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.").

In motions for injunctive relief under PACA, the mere assertion, without evidence, that a defendant "is not or may not be in a position to pay . . . demonstrates only a remote and speculative

14

possibility of future harm," insufficient to establish the necessary irreparable harm. *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990). A Court may only enjoin a party where monetary damages are not adequate compensation for a harm and, as such, a Court may only enjoin a Defendant where Plaintiff can demonstrate that, absent a preliminary injunction, recovery of damages is unlikely. *See id.* at 79.

Plaintiff has not made such a showing. As an initial matter, any exigency that Congress anticipated when creating these protective PACA trusts, due to the perishable nature of the goods at issue, has long passed because the goods here were sold over three years ago. *See generally S. Katzman Produce*, 999 F.3d at 874 (explaining the legislative history of the PACA trust).

In arguing for irreparable harm, Plaintiff again focuses solely on Sprout, not the defendants in this case. First, Plaintiff cites to several non-binding cases for the principle that "[any] risk that a PACA trustee will dissipate the trust constitutes irreparable harm." *See* Pl. Br. at 6-7; Reply at 8. Next, Plaintiff asserts it will experience irreparable harm absent injunctive relief because "Sprout has filed for bankruptcy, ceased operations, and is insolvent" and is unable to pay the claimed amount. *See* Reply at 2, 12.

However, in each case cited by Plaintiff holding that irreparable harm was established, plaintiffs had shown with evidence that the *defendants*, often the corporate buyers of the perishable goods themselves, were at risk of being unable to pay or were certainly unable to pay the amount contained in the PACA trust. *See Six L's Packing, Inc. v. Alphas Co. of New York*, No. 11 CIV. 2944 RMB FM, 2012 WL 505744, at *2 (S.D.N.Y. Feb. 15, 2012); *Belleza Fruit, Inc. v. Suffolk Banana Co.*, No. CV-12-3033 SJF WDW, 2012 WL 2675066, at *10 (E.D.N.Y. July 5, 2012); *Bonell Produce Co. Inc. v. Chloe Foods, Inc.*, No. 08-CV-4218FBCLP, 2008 WL 4951942, at *4 (E.D.N.Y. Nov. 19, 2008); *Horizon Mktg. v. Kingdom Int'l Ltd.*, 244 F. Supp. 2d 131, 140 (E.D.N.Y. 2003). Here, Sprout is not a Defendant and not the party against whom the Preliminary

Injunction is sought. As such, Sprout's ability to pay is irrelevant. In fact, Plaintiff would not be able to receive damages from Sprout if it were a defendant, as Plaintiff has explicitly disclaimed any right to do so in the Consent Order. Consent Order ¶ 3. The question at issue in this motion is whether Plaintiff has established that there is a risk that recovery *from the Named Defendants* is unlikely absent injunctive relief. Plaintiff has not made such a showing. There is nothing in the record suggesting that, assuming the Named Defendants are found liable, they would be unable to pay, or that they are currently able to pay, but soon won't be, absent a Preliminary Injunction.

### III.  The Intended Injunction

Finally, the Court would be unable to enforce the proposed injunction as written. Plaintiff moves for Preliminary Injunctive Relief ordering all Named Defendants to refrain from "alienating, dissipating, paying over, or assigning any PACA trust assets received by Defendants on account of products provided by Plaintiff, along with such other relief as the Court deems just and proper." Pl. Br. at 8. As this Court understands it, Plaintiff's argument is that any remaining PACA trust assets have been wrongly dissipated or encumbered through bankruptcy proceedings. Now, the only remedy potentially available to Plaintiff in this case is to retrieve damages from Defendants for breach of fiduciary duty, to the extent Plaintiff states such a claim, rather than payment from PACA trust assets themselves. To the extent certain Defendants once did control the assets of Sprout, they certainly do not control those assets since Sprout filed for bankruptcy under Chapter 7. The Court cannot prohibit Defendants from alienating, dissipating or otherwise encumbering assets they do not possess.

Further, there is a strong argument that the Consent Order arguably prohibits the requested injunction. That order states that the Trustee agrees to pay $400,000 "[i]n full and final satisfaction of the Allowed PACA Claim" of $713,831.39 filed against the Sprout Estate. Consent Order at ¶ 3(b). Plaintiff contends that the following sentence in the Consent Order creates a carve out for

claims against the Defendants named in this action: "[N]othing in this Consent Order shall be deemed, interpreted or otherwise construed (i) as a waiver of M&M's rights under PACA or (ii) to limit [Plaintiff's] rights against officers, directors, shareholders, or other individuals associated with the Debtor who may be liable to [M&M] for breach of PACA trust." *See* Reply at 6-7 (quoting Consent Order at ¶ 3(d)). It is certainly a plausible reading of the Consent Order that it permits claims against individuals for damages related to potential "breach[es] of PACA trust." *See* Consent Order at ¶ 3(d). However, the parties clearly agree, and the Bankruptcy Court has ordered, that any claim to retrieve money from the PACA trust held by Sprout itself has been discharged. Therefore, any restraint on PACA trust assets, such as the one demanded here, arguably would violate the Consent Order and attempt to improperly restrain another jurisdiction. On the record before it on this motion, the Court declines to do so. Even if the Court were to read the requested injunction as a restraint on the *personal assets* of Named Defendants for a breach of fiduciary duty, as addressed above, Plaintiff has failed to carry its burden to show that its claim is likely to succeed on the merits and that the lack of an injunction would create irreparable harm.

## CONCLUSION

On the record before it, the Court cannot find that Plaintiffs have made a clear showing it is likely to succeed on the merits or that it will be irreparably harmed absent injunctive relief. As such, Plaintiff's Motion for a Preliminary Injunction is DENIED.

**SO ORDERED.**

Date: November 22, 2024
New York, NY

_____
**MARY KAY VYSKOCIL
United States District Judge**